# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JANET QUATTLEBAUM**                                              **PLAINTIFF**

**v.**                      **NO. 4:22-cv-00331-BSM-PSH**

**KILOLO KIJAKAZI, Acting Commissioner of**                        **DEFENDANT**
**the Social Security Administration**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

In this case, plaintiff Janet Quattlebaum ("Quattlebaum") challenges the denial of her application for disability insurance benefits on the ground that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] Quattlebaum specifically maintains, in part, that her fibromyalgia was not considered at any step in the sequential evaluation process, and the ALJ erred when he mischaracterized Quattlebaum's past relevant work. Because the record as to those issues is not fully developed or otherwise unclear, it is recommended that this case be remanded for further development of the record and additional consideration.

Quattlebaum has experienced pain since well before the April 12, 2019, alleged onset date and has sought care for her pain. For instance, Quattlebaum occasionally sought care from a rheumatologist, Dr. Alina Voinea, M.D., ("Voinea"). See Transcript at 513-553. Voinea diagnosed fibromyalgia in July of 2016, and her progress note from that presentation reflects the following as to Quattlebaum's symptoms:

---

[1] The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019).

> The symptoms began 6 months ago and generally lasts varies. The symptoms are reported as being moderate. The symptoms occur daily. The location is all over. Aggravating factors include nothing. Relieving factors include nothing. She states the symptoms are chronic and poorly controlled. ...

See Transcript at 547. Voinea prescribed Cymbalta, although it was later determined that Quattlebaum could not tolerate the medication.

Voinea continued to diagnose fibromyalgia up to, and through, the alleged onset date and continued to treat the symptoms conservatively. For instance, at a January of 2020 presentation, Voinea noted that Quattlebaum was doing well, and needed to lose weight and exercise, but a general examination revealed that "[a]ll fibromyalgia points [were] tender." See Transcript at 515.

On February 20, 2020, Quattlebaum was seen by Dr. Joshua Page, M.D., ("Page") for a consultative medical examination. See Transcript at 452-456. Quattlebaum's chief complaints were recorded to be fibromyalgia and degenerative disc disease. Her medical history was taken, and she reported having been diagnosed with fibromyalgia "around 2013" but was not taking any medication for the impairment. See Transcript at 452. She also complained of worsening chronic low back pain. A physical examination was unremarkable and included the following findings with

respect to her gait/station: "Normal, able to rise from a sitting position without assistance. Able to bend and squat without difficulty." See Transcript at 454. Imaging of her lumbar region revealed mild multi-level degenerative changes. Page diagnosed, inter alia, fibromyalgia and mild degenerative disc disease of the lumbar spine. Page opined on the basis of his examination and the "objective evidence" that Quattlebaum should be able to "sit, walk, and stand for a full workday" but could only "lift/carry objects up to 10 pounds, ..." See Transcript at 454.

Quattlebaum completed a Work History Report as a part of her application for disability insurance benefits. See Transcript at 166-168. She represented that from August of 2004 until November of 2007, she worked as a buyer for the Arkansas Department of Community Correction ("DCC"). From November of 2007 until April of 2019, she worked as a buyer for the State of Arkansas. She represented that the type of work for the latter job was procurement, and her responsibilities included creating bids, awarding contracts, and overseeing the performance of the contracts.[2]

---

[2] Although not binding on the ALJ, the state agency found at the initial and reconsideration stages that Quattlebaum's job with the DCC was that of a "buyer," and her job with the State of Arkansas was that of a "bid solicitor." See Transcript at 60, 79. The state agency found at the initial and reconsideration stages that she is unable to return to the jobs as she described them or as they are customarily performed in the national economy. See Transcript at 61, 80.

4

Quattlebaum also completed a Work Background Report. See Transcript at 270. In the report, she described her work with the DCC and the State of Arkansas as clerical, involving such things as filing, working on a computer, maintaining inventory, and buying.

Quattlebaum testified during the administrative hearing and was asked about her responsibilities while working with the DCC and the State of Arkansas. She testified as follows:

> Q. ... tell us about your work history? I think you worked for the State of Arkansas in the last 15 years, is that correct?
>
> A. Correct.
>
> Q. And what position did you hold there while you were working at Arkansas Department of [INAUDIBLE], State of Arkansas?
>
> A. A purchasing agent.
>
> Q. Okay and what did you do for the 15 years you were there—the last 15?
>
> A. I created bid [sic] from fax that were sent over by state agencies and once those bids were given a lot of time and date for opening, they were opened. Some of them came in in boxes that I had to try to lift. The bid was opened and then I had to create a contract once we verified all the facts that the [INAUDIBLE] had sent into us, created the contract. Most contracts were for seven years and I oversaw those contracts from start to finish.
>
> Q. Okay, were you sometimes called a buyer, also?

> A. Yes.
>
> Q. All right. And this—I see where from 2004 to 2007, you worked for—I guess the Department of Corrections.
>
> A. Yes.
>
> Q. And in—also the State of Arkansas. Were those the same type of jobs?
>
> A. They were the type, just difference [sic] agencies.

See Transcript at 31-32.

Quattlebaum was also asked about her impairments and the limitations they cause. She identified fibromyalgia as one of her disabling impairments, and she testified that it contributes to the difficulties she experiences with sitting, standing, and walking.

A vocational expert also testified during the administrative hearing and was asked about Quattlebaum's work history, specifically, her work with the DCC and the State of Arkansas. The vocational expert's testimony about Quattlebaum's work with the DCC and the State of Arkansas was as follows:

> Q. Ms. Brown, have you had an opportunity to review the claimant's vocational history?
>
> A. Yes, Your Honor.

> Q. Anything you need clarified about it?
>
> A. No. Your Honor.
>
> Q. Please describe her past work.
>
> A. Procurement clerk, DOT 249.367-066, sedentary, SVP of 4, semi-skilled. I believe that will cover both of the positions.

See Transcript at 42.

In January of 2021, or following the conclusion of the administrative hearing but before the ALJ issued his written decision, Quattlebaum signed a letter in which she clarified the responsibilities of her past relevant work with the State of Arkansas. In the letter, which was admitted as Exhibit B26E, she represented the following:

> I was a buyer for the State of Arkansas for several years, not a purchasing clerk. I did not have an assistant.
>
> I was assigned a bid folder by my Supervisor for an Arkansas State Agency for a commodity in which they wanted to purchase. I was tasked with taking agency specs. for said item(s) and creating a bid after researching item(s). Bids were posted by an Admin. Administrator or Clerk for a certain amt. of time as required under the Arkansas State Purchasing Laws and then awarded to the lowest, responsible, responsive vendor for a one year contract with 6 options to renew up to 7 years total not to exceed a 7 yr. contract.
>
> I handled Bid/Contract/Renewals. The State of Ark. did not have Purchasing Clerks; we were buyers without assistants.

> I even taught a Printing Class twice a year. Printing items fall under Arkansas Amendment 54. Unless it is digitally printed or purchased through a State operated and owned print shop; if it cost a penny it has to be bid. I was the only "Print Buyer" for the State of Arkansas.

See Transcript at 285.

The ALJ assessed Quattlebaum's residual functional capacity and found that she is capable of performing a reduced range of medium, semi-skilled work. At step four of the sequential evaluation process, the ALJ relied upon the vocational expert's testimony and found that Quattlebaum is capable of performing her past relevant work as a "procurement clerk (DOT 249.367-066, sedentary as actually and generally performed, SVP 4, semi-skilled)." See Transcript at 20. The ALJ thus concluded that Quattlebaum is not disabled within the meaning of the Social Security Act.

Quattlebaum maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Quattlebaum so maintains, in part, because evidence of her fibromyalgia was not considered at any step in the sequential evaluation process, and the ALJ erred in characterizing Quattlebaum's past relevant work. The record as to those issues is not fully developed, or otherwise unclear, and a remand would be beneficial for the reasons that follow.

First, the ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

The ALJ is required to develop the record fully and fairly with respect to the claimant's residual functional capacity. The ALJ is not required, though, to discuss "every piece of evidence," and his failure to cite specific evidence does not mean that he did not consider the evidence in making the assessment. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010). The ALJ's focus is always on the limitations caused by an impairment, not its diagnosis. See Trenary v. Bowen, 898 F.2d 1361 (8th Cir. 1990).

Here, Quattlebaum reported having been diagnosed with fibromyalgia around 2013, but the record does not support her assertion. It is undeniable that in July of 2016, Voinea diagnosed fibromyalgia, a diagnosis also made by Page. At the administrative hearing, Quattlebaum identified fibromyalgia as one of her disabling impairments and reported that it contributes to her difficulties sitting, standing, and walking. The ALJ in his written decision, though, made no mention of the impairment and how it might contribute to Quattlebaum's limitations.

It is unclear how, and to what extent, the limitations caused by Quattlebaum's fibromyalgia impact her residual functional capacity. The evidence as to those limitations is certainly not overwhelming, and it is possible that they have no impact on her residual functional capacity because, for example, she worked until April of 2019 and her symptoms have been treated conservatively. That determination, though, is for the ALJ in the first instance. His failure to consider the impairment and the limitations it causes, particularly when she testified that it is a disabling impairment, warrants remanding this case for further development of the record and additional consideration.[3]

Second, at step four of the sequential evaluation process, the ALJ is required to determine if the claimant's impairments prevent her from performing her past relevant work. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A claimant is not disabled if she can perform the "actual functional demands and job duties of a particular past relevant job," or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." See Id. at 853.

---

[3] The case at bar is unlike Grindley v. Kijakazi, 9 F.4th 622 (8th Cir. 2021). There, the ALJ recognized Grindley's fibromyalgia diagnosis, weighed all the evidence, and credited the "normal" examination results. Here, the ALJ did not recognize Quattlebaum's fibromyalgia diagnosis, and it cannot be said that the ALJ weighed the evidence relevant to the limitations caused by the impairment.

"The ALJ must use caution that he considers a claimant's specific past relevant work and avoid painting a claimant's past relevant work with an overly broad brush, by simply considering a similar definition." See Wilson v. Commissioner, Social Security Administration, No. 2:22-cv-02071-PKH-BAB, 2023 WL 2942193, 5 (W.D. Ark. Mar. 29, 2023), report and recommendation adopted, No. 2:22-cv-02071-PKH, 2023 WL 2935026 (W.D. Ark. Apr. 13, 2023).

Here, Quattlebaum represented that her past relevant work was that of a buyer/purchasing agent, which apparently involves skilled work. See Dictionary of Occupational Titles 162.157-018 (buyer), Dictionary of Occupational Titles 162.157-038 (purchasing agent). A vocational expert, though, characterized Quattlebaum's past relevant work as that of a procurement clerk, which apparently involves semi-skilled work, and the ALJ embraced the vocational expert's testimony. The ALJ then found at step four that because Quattlebaum can perform semi-skilled work, she is capable of performing her past relevant work. In January of 2021, following the conclusion of the administrative hearing but before the ALJ issued his written decision, Quattlebaum submitted a letter in which she clarified the responsibilities of her past relevant work. The letter was admitted into the record as Exhibit B26E.

Had Quattlebaum's January of 2021 letter not been admitted into the record, the ALJ could have found as he did. It does not appear, though, that the ALJ actually considered Quattlebaum's letter. The vocational expert certainly did not have the benefit of the letter prior to her testimony. It is also not clear if the letter might cause the characterization of Quattlebaum's past relevant work to be more in the nature of a buyer/purchasing agent, which apparently involves skilled work and which exceeds her residual functional capacity. That determination is for the ALJ in the first instance, with the possible input from a vocational expert and the Dictionary of Occupational Titles. Because there is uncertainty about whether the ALJ actually considered the January of 2021 letter, and whether it might cause the characterization of Quattlebaum's past relevant work to change, a remand would be beneficial in order to further develop the record.

Given the foregoing, it is recommended that this case be remanded for further development of the record and additional consideration. The ALJ should be directed to consider Quattlebaum's fibromyalgia and the limitations, if any, it causes. The ALJ should also be directed to re-consider the skill level of Quattlebaum's past relevant work, particularly in light of her January of 2021 letter.

The final decision of the Acting Commissioner of the Social Security Administration is not supported by substantial evidence on the record as a whole and should be reversed. This case should be remanded, and the remand should be pursuant to "sentence four" as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991).

DATED this 29th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE